**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| RUBY E. PINEDA,<br><br>Plaintiff,<br><br>v.<br><br>MICHEL LAW, LLC, d/b/a LEVEL ONE LAW,<br><br>Defendant. | Case No. |

## FIRST AMENDED COMPLAINT

**NOW COMES** RUBY E. PINEDA ("Plaintiff"), by and through the undersigned counsel, complaining of MICHEL LAW, LLC, doing business as LEVEL ONE LAW ("Defendant") as follows:

## NATURE OF ACTION

1. Plaintiff brings this action seeking redress pursuant to the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 *et seq*., the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code § 47-18-104 *et seq.*, fraud, negligent misrepresentation, legal malpractice, breach of contract, and breach of fiduciary duty.

## JURISDICTION AND VENUE

2. The Court has federal question jurisdiction pursuant to 28 U.S.C. §1331.

3. Venue is proper as Defendant is located in this district.

## PARTIES

4. Plaintiff is a natural person, over 18 years-of-age, who at all times relevant resided in Cleveland, Tennessee.

5. Defendant is a law firm that claims to help consumers resolve their consumer debt. Defendant's principal place of business is located at 100 South Ashley Drive, Suite 600, Tampa, Florida 33602.

## FACTUAL ALLEGATIONS

6. In 2022, Plaintiff experienced medical issues complicating her ability to perform her job duties and resulting in a significant decrease in her pay.

7. Due to the financial hardship, Plaintiff struggled to keep up with her mounting debt.

8. Accordingly, Plaintiff began looking for debt relief companies that could assist her in resolving her debt and improving her credit.

9. Plaintiff ultimately found Defendant through her search and contacted Defendant to inquire about Defendant's services.

10. During a call with Defendant's agent, the agent represented to Plaintiff that it would be able to: (1) resolve Plaintiff's financial obligations for a significant discount by negotiating with Plaintiff's creditors; and (2) improve Plaintiff's credit scores.

11. Defendant further represented to Plaintiff that all she would need to do is make monthly payments over a certain period of time and that Defendant would utilize the payments to expeditiously resolve Plaintiff's enrolled debts.

12. Plaintiff was persuaded by Defendant's promises that its debt settlement program would provide her with an easier way to become debt free.

13. In or around September 2022, having relied on Defendant's representations, Plaintiff formally enrolled various debts into Defendant's debt settlement program and Defendant issued Plaintiff a Welcome Package outlining the terms of her program.

14. On May 19, 2023 Defendant memorialized the terms of Plaintiff's program in a written contract, whereby Defendant agreed to provide legal and debt resolution services.

15. Specifically, Plaintiff enrolled a total debt amount of approximately $59,471 across ten accounts.

16. Pursuant to the contract, Plaintiff was obligated to make monthly payments of approximately $877.27.

17. Plaintiff proceeded to make her monthly payments to Defendant in a timely manner.

18. During the enrollment period, Plaintiff was repeatedly assured that Defendant was actively communicating with her enrolled creditors and that settlements would soon be reached.

19. Despite Defendant's assurances, Defendant failed to resolve Plaintiff's debts as expeditiously as Defendant represented it would.

20. Despite Defendant's representations, Plaintiff's credit scores did not improve during the enrollment period.

21. Plaintiff signed up for Defendant's debt settlement and credit improvement services based on its representations that it would negotiate and settle her outstanding debts and improve her credit.

22. After a few months of Plaintiff making regular payments into Defendant's program, Plaintiff grew concerned about Defendant's lack of progress in resolving her enrolled accounts.

23. Plaintiff relied on Defendant's assurances that it was working on negotiating settlements with Plaintiff's creditors on her behalf.

24. Throughout its dealings with Plaintiff, Defendant deceptively and misleadingly strung Plaintiff along, telling her what she wanted to hear in order for her to keep making payments, only to fail to deliver on the promises and representations that induced Plaintiff's continued participation in Defendant's debt settlement program.

25. Furthermore, Defendant repeatedly suggested to Plaintiff that it was working towards resolving Plaintiff's enrolled accounts.

26. However, Defendant chronically failed to engage the vast majority of Plaintiff's creditors in settlement discussions, which resulted in Plaintiff's creditors hounding Plaintiff for payments.

27. Despite Plaintiff paying in no less than $21,054 into Defendant's program, Defendant failed to meaningfully (1) engage Plaintiff's creditors in settlement discussion; (2) resolve any of Plaintiff's debts; or (3) improve Plaintiff's credit scores.

28. As a result of Defendant's inaction, Plaintiff's creditors continued to hound Plaintiff through harassing collection calls, letters, and other collection activity.

29. After routinely making monthly payments of approximately $877 over the course of two years, Plaintiff was frustrated to learn that Defendant had only managed to resolve one of her enrolled accounts, which accounted for a mere 1% of Plaintiff's enrolled total debt.

30. In November of 2024, Defendant informed Plaintiff that Defendant was involved in a lawsuit brought by the federal government, and that Defendant would no longer be able to "assist" Plaintiff with her debts.

31. Despite notifying Plaintiff of Defendant's inability to resolve Plaintiff's enrolled accounts, Defendant continued to withdraw funds from Plaintiff's account.

32. Plaintiff suffered significant damages as result of Defendant's misrepresentations and omissions, including: financial losses, increased debt due to interest that accrued on the enrolled debt, emotional distress, mental anguish, decreased credit score, and deprivation of the money that Plaintiff paid into Defendant's program.

33. Simply put, Plaintiff found herself in a much worse financial position after enrolling in Defendant's "debt settlement" program.

## COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT
**Violations of CROA § 1679b(a)(3)**

34. Plaintiff repeats and realleges all preceding paragraphs as though fully set forth herein.

35. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA because she is an individual that sought and obtained credit repair services.

36. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

37. Section 1679b(a)(3) of the CROA prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization."

38. Defendant violated §1679b(a)(3) by, *inter alia*, (1) failing to pay Plaintiff's creditors with the funds that Plaintiff paid into the debt settlement program; (2) failing to provide legal and debt settlement services that it was contractually obligated to provide; (3) failing to promptly communicate with Plaintiff's creditors in an effort resolve Plaintiff's debts; (4) failing

to resolve Plaintiff's debts or improve Plaintiff's credit score; and (5) putting its financial interests ahead of Plaintiff's interests

**COUNT II– VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT**
**Violations of CROA § 1679b(a)(4)**

39. Additionally, Section 1679b(a)(4) of the CROA, prohibits any person from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

40. Defendant violated §1679b(a)(4) by, *inter alia*, (1) failing to pay Plaintiff's creditors with the funds that Plaintiff paid into the debt settlement program; (2) failing to provide legal and debt settlement services that it was contractually obligated to provide; (3) failing to promptly communicate with Plaintiff's creditors in an effort resolve Plaintiff's debts; (4) failing to resolve Plaintiff's debts or improve Plaintiff's credit score; and (5) putting its financial interests ahead of Plaintiff's interests.

**COUNT III – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT**
**Violations of CROA § 1679b(b)**

41. Section 1679b(b) of CROA provides:

> No credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed.

42. Defendant violated § 1679b(b) by charging Plaintiff for services, such as resolving Plaintiff's debts and improving Plaintiff's credit scores, prior to completing performance of the same.

## COUNT IV – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT
**Violations of CROA § 1679d**

43. Section 1679d(b)(4) of the CROA outlines various requirements for the contracts between credit repair organizations and consumers, including "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" 15 U.S.C. § 1679d(b)(4).

44. Defendant violated § 1692d(b)(4) of the CROA through its failure to provide the required disclosure in bold face type in immediate proximity for the place reserved for Plaintiff's signature on the contract.

45. As alleged above, Plaintiff was harmed by Defendant's conduct.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

a. A judgment in Plaintiff's favor for Defendant's violations of the aforementioned sections of CROA;

b. An award of actual damages pursuant to 15 U.S.C. § 1679g(a)(1);

c. An award of punitive damages pursuant to 15 U.S.C. § 1679g(a)(2)(A);

d. An award of Plaintiff's attorney's fees and costs pursuant to 15 U.S.C. § 1679g(a)(3); and

e. Any further relief as this Honorable Court finds to be just and appropriate.

## COUNT V– VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT

46. Plaintiff is a "person" and "consumer" as defined by Tenn. Code § 47-18-103(18) and (6) respectively, because she is an individual who sought or acquired Defendant's services.

47. Defendant is a "person" as defined by Tenn. Code § 47-18-103(18) because it is a business entity.

48. Defendant's provision of services to Plaintiff in exchange for money constitutes the offering for sale, lease or rental of services as provided under Tenn. Code § 47-18-103(24).

49. The TCPA, pursuant to Tenn. Code § 47-18-104(a), broadly prohibits unfair or deceptive acts or practices in consumer transactions.

50. Defendant violated the above provision of the TCPA by, *inter alia*, unfairly and deceptively (1) failing to pay Plaintiff's creditors with the funds that Plaintiff paid into the debt settlement program; (2) failing to provide legal and debt settlement services that it was contractually obligated to provide; (3) failing to promptly communicate with Plaintiff's creditors in an effort resolve Plaintiff's debts; (4) failing to resolve Plaintiff's debts or improve Plaintiff's credit score; and (5) putting its financial interests ahead of Plaintiff's interests.

51. Defendant knew that its debt resolution program could not possibly improve Plaintiff's credit score as it required Plaintiff to stop making payments to her creditors, which caused a decrease in Plaintiff's credit score.

52. Defendant's inexplicable mishandling of Plaintiff's financial interests despite its assurances to the contrary clearly evidences Defendant's willful and knowing violation of the above-referenced statute. Accordingly, Plaintiff respectfully requests treble damages for Defendant's blatant violations.

53. As pled above, Plaintiff was harmed by Defendant's conduct.

**WHEREFORE**, Plaintiff requests the following relief:

a. A judgment in favor of Plaintiff for Defendant's violations of the TCPA;

b. An award of actual damages pursuant to Tenn. Code § 47-18-109(a)(1);

c. An award of punitive damages pursuant to Tenn. Code § 47-18-109(3) ;

d. An award of Plaintiff's reasonable attorney's fees and costs pursuant to Tenn. Code § 47-18-109(e)(1); and,

e. Any further relief the Honorable Court deems just and appropriate.

**COUNT VI - FRAUD**

54. The elements of fraud are: (1) an intentional misrepresentation of an existing material fact, (2) knowledge of the representation's falsity, (3) an injury caused by reasonable reliance on the misrepresentation, and (4) the requirement that the misrepresentation involve a past or existing fact. *Lopez v. Taylor*, 195 S.W.3d 627 (Tenn. Ct. App. 2005).

55. Defendant committed fraud by falsely representing to Plaintiff that it would (1) negotiate with her creditors; (2) expeditiously resolve her debts; and (3) improve her credit score.

56. Defendant knew that its debt resolution program could not possibly improve Plaintiff's credit score as it required Plaintiff to stop making payments to her creditors, which caused a decrease in Plaintiff's credit score.

57. Plaintiff detrimentally relied on the representations by enrolling in Defendant's debt resolution/credit improvement program and making payments into the program.

58. Despite making payments into Defendant's debt resolution and credit improvement program, Defendant failed to settle Plaintiff's debts or improve Plaintiff's credit score.

59. As alleged above, Plaintiff was severely harmed by Defendant's actions and inaction.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. A judgment in Plaintiff's favor for fraud;

b. Awarding Plaintiff actual and punitive damages, in an amount to be determined at evidentiary hearing;

c. Awarding Plaintiff her reasonable attorney's fees and costs; and

d. Awarding any other relief as this Honorable Court deems just and appropriate.

**COUNT VII –NEGLIGENT MISREPRESENTATION**

60. In Tennessee, the elements of a negligent misrepresentation claim are: (1) that the defendant was acting in the course of its business, profession, or employment, (2) that the defendant supplied false information for the guidance of others in its business transactions, (3) that the defendant failed to exercise reasonable care in obtaining or communicating the information, and (4) that the plaintiff justifiably relied on the information. *Sears v. Gregory*, 146 S.W.3d 610, 621 (Tenn. Ct. App. 2004) (citing *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431 (Tenn. 1991)).

61. Defendant made negligent misrepresentations through its conduct in promising Plaintiffs that it would (1) promptly communicate with Plaintiff's enrolled creditors, (2) efficiently settle Plaintiff's enrolled debts, and (3) improve Plaintiff's credit score.

62. Further, Defendant implicitly and/or explicitly represented to Plaintiff that its services would improve Plaintiff's credit scores when it knew that Plaintiff's credit scores would decrease due to missed payments.

63. Plaintiff heavily relied on all of the aforementioned false statements to her detriment.

64. As alleged above, Plaintiff was severely harmed by Defendant's actions and inaction.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. A judgment in Plaintiff's favor for negligent misrepresentation;

b. Awarding Plaintiff actual and punitive damages, in an amount to be determined at evidentiary hearing;

c. Awarding Plaintiff's reasonable attorney's fees and costs; and

d. Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT VIII – LEGAL MALPRACTICE

65. In Tennessee, to establish a cause of action for legal malpractice based on negligence, a plaintiff must prove the following elements: (1) a duty of care owed by the attorney to the plaintiff; (2) a breach of that duty by the attorney; (3) an injury or loss suffered by the plaintiff; (4) causation in fact, meaning the attorney's breach caused the injury; and (5) proximate cause. *Jones v. Allman,* 588 S.W.3d 649 (Tenn. Ct. App. 2019).

66. Plaintiff and Defendant entered into an attorney-client relationship on or around September of 2022 when Defendant agreed to provide legal representation and debt resolution services to Plaintiff.

67. Defendant owed a professional duty to Plaintiff as a result of this contractual relationship, specifically to negotiate with Plaintiff's creditors and to provide other legal services.

68. The professional duty requires the attorney to exercise the ordinary care, skill, and diligence commonly possessed and practiced by attorneys throughout the state. *Chapman v. Bearfield*, 207 S.W.3d 736 (Tenn. 2006).

69. Defendant breached its duties as set forth in the Agreement by, *inter alia*, (1) failing to promptly communicate with Plaintiff's enrolled creditors, (2) failing to resolve *any* of Plaintiffs' enrolled debts, and (3) failing to improve Plaintiffs' credit score.

70. As set forth above, Defendant failed to resolve any of Plaintiff's debts despite having adequate funds to resolve Plaintiff's debts.

71. As set forth above, Plaintiff suffered damages as a result of Defendant's legal malpractice.

**WHEREFORE**, Plaintiff, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. A judgment in favor of Plaintiff for legal malpractice;

b. Awarding Plaintiff actual damages;

c. Award Plaintiff punitive damages; and,

d. Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT IX – BREACH OF CONTRACT

72. The contract for debt settlement services between Plaintiff and Defendant is a valid and enforceable contract.

73. The elements of breach of contract are (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of contract, and (3) damages caused by the breach of the contract. *Tenn. Homes v. Welch*, 664 S.W.3d 1 (Tenn. Ct. App. 2022).

74. Defendant breached its contract with Plaintiff by, *inter alia*, (1) failing to pay Plaintiff's creditors with the funds that Plaintiff paid into the debt settlement program; (2) failing to provide debt settlement services to the best of its ability in an effort effectuate reasonable settlements; (3) failing to promptly communicate with Plaintiff's creditors in an effort resolve Plaintiff's debts; (4) pocketing unearned fees and fees not authorized by the contract; and (5) putting its financial interests ahead of Plaintiff's interests.

75. As set forth above, Plaintiff suffered damages as a result of Defendant's breach of contract.

**WHEREFORE**, Plaintiff respectfully request the following relief:

a. A judgment in favor of Plaintiff for breach of contract;

b. Awarding Plaintiff compensatory damages;

c. Awarding Plaintiff punitive damages; and,

d. Awarding any other relief as this Honorable Court deems just and appropriate.

**COUNT X – BREACH OF FIDUCIARY DUTY**

76. Defendant owed Plaintiff a fiduciary duty arising out of the nature of their relationship.

77. Defendant owed Plaintiff a fiduciary duty because Plaintiff reposed a special confidence in Defendant and Defendant was bound to act in good faith and with due regard of Plaintiff.

78. Specifically, Plaintiff entrusted Defendant with her money and to use her money in a responsible manner to settle her debts.

79. Defendant breached its fiduciary duty to Plaintiffs by*, inter alia*, (1) failing to pay Plaintiff's creditors with the funds that Plaintiff paid into the debt settlement program; (2) failing to provide legal and debt settlement services to the best of its ability in an effort effectuate

reasonable settlements; (3) failing to communicate with Plaintiff's creditors in an effort resolve Plaintiff's debts; (4) pocketing unearned fees and fees not authorized by the contract; and (5) putting its financial interests ahead of the interests of Plaintiff.

80. As set forth above, Plaintiff suffered damages as a result of Defendant's conduct.

**WHEREFORE**, Plaintiff respectfully request the following relief:

a. A judgment in Plaintiff's favor for breach of fiduciary duty;

b. Awarding Plaintiff actual damages;

c. Award Plaintiff punitive damages;

d. Award Plaintiff reasonable attorney's fees and costs;

e. Awarding any other relief as this Honorable Court deems just and appropriate

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: April 4, 2025

Respectfully submitted,

*/s/ Alexander J. Taylor*

Alexander J. Taylor, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 South Highland Ave.
Suite 200
Lombard, Illinois 60148
(630) 575-8181 (phone)
(630) 575-8188 (fax)
ataylor@sulaimanlaw.com